# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
### EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| NICOLE DENISE NELSON, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-00183 |
| | ) | |
| GREAT LAKES EDUCATIONAL LOAN | ) | |
| SERVICES, INC., and | ) | |
| DOE DEFENDANTS 1-10, | ) | *JURY TRIAL DEMANDED* |
| | ) | |
| *Defendants.* | ) | *EQUITABLE RELIEF SOUGHT* |

## CLASS ACTION COMPLAINT

Plaintiff, Nicole Denise Nelson ("Plaintiff"), by her undersigned attorneys, on her own behalf and on behalf of all others similarly situated, upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, brings this action against Defendants Great Lakes Educational Loan Services, Inc. ("Great Lakes") and Doe Defendants 1-10 (collectively, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.    Defendants' principal responsibilities as a student loan servicer include managing borrowers' accounts, processing monthly payments, assisting borrowers to learn about, enroll in, and remain in alternative repayment plans, and communicating directly with borrowers about the repayment of their loans.

2.    Federal student loan borrowers who are unable to afford their current monthly payments have the right to change to another repayment plan <u>at any time</u>, including if the borrower is experiencing financial hardship or distress.

3.     In fact, most federal student borrowers are eligible under federal law for an income-driven repayment plan, which sets their monthly student loan payment as only a percentage (generally, 10% to 20%) of their "discretionary" income.

4.     Income-driven repayment plans can offer borrowers extended payment relief, as well as other significant benefits, including a $0.00 per month payment amount which count towards various loan forgiveness programs.

5.     However, despite the wide-spread availability of income-driven repayment plans, and their clear benefits to student loan borrowers, student loan servicers, like Great Lakes, systematically deterred Plaintiff, and upon information and belief, potentially thousands of other borrowers from obtaining access to some or all of the benefits and protections associated with income driven repayment plans.

6.     In fact, and in the face of assuring borrowers that Defendants would help the student loan borrowers find the right repayment option for their circumstances, Great Lakes steered borrowers experiencing non-short-term financial hardship into costly payment relief programs designed for borrowers experiencing short-term financial problems (forbearance), before or instead of affordable and sustainable (albeit, less lucrative) long-term student loan repayment options that were more beneficial to Plaintiff and other student loan borrowers in light of his or her financial situation (income-driven repayment).

7.     Consequently, Great Lakes has failed to perform its core duties in the servicing of student loans. Instead, Great Lakes has violated its duties to Plaintiff and others similarly situated under the Illinois Consumer Fraud and Deceptive Business Practices Act, as well as violating the trust that student loan borrowers placed in the company, by steering struggling student loan borrowers into forbearance, rather than an eligible "income-driven" repayment plan that could have provided

monthly payments as low as $0.00 per month, a significant benefit to the struggling student loan borrower, but potential less profitable for Defendants.

## THE PARTIES

1.      Plaintiff Nicole Denise Nelson is, and at all times mentioned herein is believed to have been, an individual citizen of the State of Illinois. Ms. Nelson currently resides in Shiloh, Illinois.

2.      Defendant Great Lakes Educational Loan Services, Inc. is a corporation organized and operating under the laws of the State of Wisconsin with a principal place of business at 2401 International Lane, Madison, Wisconsin 53704.

3.      Defendant Great Lakes Education Loan Services, Inc. may be served through its registered agent Business Filings Incorporated at 600 South Second Street, Springfield, Illinois 62074.

4.      Doe Defendants 1 through 10 are Defendants who may be identified an added to this action pending discovery in this matter.

## JURISDICTION AND VENUE

5.      This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331.

6.      Further, this Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. 1332(d)(2) based on minimal diversity of citizenship between Plaintiff and Defendants and an amount in controversy exceeding $5,000,000.

7.      This Court has supplemental jurisdiction over pendent state law claims pursuant to 28 U.S.C. §1367(a).

8.      This Court has personal jurisdiction over the Defendants because Defendants regularly and systematically conduct business in this District, including, at minimum, entering into contracts in this District, collecting student loan payments from this District, and communicating and advising student loan debtors residing in this District.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants communicate with and advise student loan debtors residing in this District and collect student loan payments from this District.

10.      Assignment to the East St. Louis Division of this Court is proper as Plaintiff resides in St. Clair County, Illinois and many of the allegations giving rise to this Complaint occurred in St. Clair County, Illinois.

## FACTUAL ALLEGATIONS

11.      For federal student loan borrowers entering repayment, the "default" or "standard" repayment plan is the 10-year repayment option.

12.      While the standard 10-year repayment plan provides student loan borrowers with consistent monthly payments that ensures both accrued interest and principal will be paid in full in ten years, the standard 10-year monthly payment amount can range from hundreds to *thousands* of dollars per month depending on the amount of student loan debt owed by the student loan borrower.

13.      In addition to the standard 10-year repayment plan, there are several other repayment plans available to federal student loan borrowers.

14.      Some of those plans, like the "graduated repayment plan" or "extended" options, also allow student loan borrowers to completely pay off the student loan's accrued interest and principal, but over a longer period of time (usually 20 to 25 years). Not surprisingly, the monthly payment amount due under one of these plans is less than the 10-year standard repayment plan.

15.      Other student loan repayment plans are "income-driven." There are currently five income-driven plans: (1) Income-Contingent Repayment ("ICR"); (2) Income-Based Repayment ("IRB"); (3) IBR for New Borrowers ("N-IRB"); (4) Pay-As-You-Earn ("PAYE"); and (5) Revised Pay-As-You-Earn ("REPAYE").

16.     Each of these income-driven plans requires student loan borrowers to pay only a percentage (10%-20%) of his or her "discretionary income" as his or her monthly payment amount over a certain period of time (generally, 20 or 25 years) – and then the remaining balance of the student loan borrower's student loans will be forgiven.

17.     As such, the monthly payments under an income-driven plan are usually drastically lower than the monthly payments under any other student loan repayment plan.

18.     In fact, depending on a borrower's income and family size, his or her monthly payments under an income-driven repayment plan can be as low as $0.00.

19.     For instance, for student loan borrowers who either have no income – i.e., are unemployed – or have a very low income (usually less than 150% of that borrower's state's poverty level depending on family size), their "income-driven" monthly payment amount would be $0.00 – but that borrower would still be "making" a qualifying monthly payment under his or her "income-driven" plan.

20.     Further, federal student loan borrowers have the right to change their repayment plan at any time, including if a student loan borrower is experiencing financial hardship or distress.

21.     However, despite the availability of alternative repayment plans with lower monthly payments to almost all federal student loan borrowers who are unable to make their current payments, student loan servicers, such as Defendants, routinely fail to inform struggling student loan borrowers of his or her right to enter an alternative, income-driven repayment plan, failed to properly explain "income-driven" repayment plans to struggling student loan borrowers, and, instead, steered struggling student loan borrowers into forbearance, which is more costly to the student loan borrower, but significantly less costly for the student loan servicer.

22.    According to the Complaint for Permanent Injunction and Other Relief in *Consumer Financial Protection Bureau v. Navient Corporation, et al.* (hereinafter "*CFPB v. Navient,*" a matter brought against another student loan servicer:

> Navient representatives sometimes initially responded to borrowers' inability to make a payment by placing them in voluntary forbearance without adequately advising them about available income-driven repayment plans. This occurred even though it is likely that a large number of those borrowers would have qualified instead for a $0 payment in an income-driven repayment plan at that time. Indeed, over 50% of Navient borrowers who need payment relief, and meet the eligibility criteria for income-driven repayment plans, qualify for a $0 monthly payment.
>
> For example, between January 1, 2010 and March 31, 2015, nearly 25% of borrowers who ultimately enrolled in IBR with a $0 payment were enrolled in voluntary forbearance within the twelve-month period immediately preceding their enrollment in IBR. Similarly, during that same time period, nearly 16% of borrowers who ultimately enrolled in PAYE with a $0 payment were enrolled in voluntary forbearance within the twelvemonth period immediately preceding their enrollment in PAYE. The majority of these borrowers were enrolled in voluntary forbearance more than three months prior to their enrollment in the income-driven repayment plan, which suggests that forbearance was not merely offered to these borrowers while their application in an income-driven repayment plan was pending. **Because they were placed into forbearance before ultimately enrolling in an income-driven repayment plan with a $0 payment, these borrowers had delayed access to the benefits of the income-driven repayment plan. They were also subject to the negative consequences of forbearance,** including the addition of interest to the principal balance of the loan, which they potentially could have avoided had they been enrolled in the income-driven repayment plan from the start.

No. 3:17-cv-00101-RDM (M.D. Penn. Jan. 18, 2017) (emphasis added)

23.    Forbearance is a short-term, temporary postponement of payment that allows a borrower experiencing financial hardship or illness to stop making payments or reduce his or her monthly payment for a defined period of time.

24.    Forbearance, however, is typically not suitable for student loan borrowers experiencing financial hardship or distress that is <u>not</u> temporary or short-term, as borrowers who enroll in forbearance face significant costs, which generally increase the longer the borrower is in forbearance.

25.     These costs include the accrual of unpaid interest and the addition of that unpaid interest to the principal balance of the loan, also known as capitalization.

26.     In addition, in some cases, following a forbearance, a loan may be re-amortized, where the monthly payments may be recalculated, which can lead to an increase in the borrower's monthly payment amount.

27.     As a result of these costs, long-term enrollment in forbearance can dramatically increase the total amount due each month after the forbearance period ends and over the repayment term for a borrower's federal loans.

28.     Because income-driven repayment plans enable borrowers to avoid or reduce these costs associated with forbearance, for borrowers whose financial hardship is not temporary and short-term, enrolling in an income-driven repayment plan is usually a significantly better option than forbearance.

29.     The U.S. Department of Education has publicly encouraged borrowers to consult their federal student loan servicer to determine the best repayment option or alternative for that individual borrower.

30.     In several places on its website, the U.S. Department of Education has advised borrowers to contact their student loan servicer before applying for any alternative repayment plan or forbearance, with statements such as the following:

- "Work with your loan servicer to choose a federal student loan repayment plan that's best for you";[1]

---

[1] Federal Student Aid, U.S. Department of Education, Repayment Plans, https://studentaid.ed.gov/sa/repay-loans/understand/plans (last visited Jan. 18, 2017).

- "Before you apply for an income driven repayment plan, contact your loan servicer if you have any questions. Your loan servicer will help you decide whether one of these plans is right for you";[2] and

- "Always contact your loan servicer immediately if you are having trouble making your student loan payment."[3]

31.     Likewise, Great Lakes, as a servicer of federal loans, has repeatedly encouraged borrowers experiencing financial hardship to contact Defendants for assistance in evaluating the various alternative repayment options, and not to contact others for student loan advice.

32.     For example, Defendants' website features statements about how Defendants' "experts" including:

- Everyones [*sic*] personal situation is different. Whenever you're unsure about something related to your student loans, come to us. Our trained experts work on your behalf, and we look forward to making things go as smoothly as possible with your student loans.[4]

- Free Expert Help!

  You don't have to pay for student loan services or advice. Our expert representatives have access to your latest student loan information and understand all of your options.[5]

33.     Defendants also tout themselves as "your primary point of contact for questions about your loans."[6]

---

[2] Federal Student Aid, U.S. Department of Education, Income-Driven Repayment Plans, https://studentaid.ed.gov/sa/repay-loans/understand/plans/income-driven.

[3] Federal Student Aid, U.S. Department of Education, Deferment and Forbearance, https://studentaid.ed.gov/sa/repay-loans/deferment-forbearance (last visited Jan. 18, 2017).

[4] https://www.mygreatlakes.org/educate/knowledge-center/free-services.html

[5] https://www.mygreatlakes.org/educate/knowledge-center/postponing-your-student-loan-payments.html

[6] https://www.mygreatlakes.org/educate/knowledge-center/transferred-loan-questions.html

34.    Upon information and belief, Defendants' website has included other, similar statements.

35.    Nevertheless, despite attempting to publicly assure student loan borrowers that Defendants will help student loan borrowers identify and enroll in an appropriate, affordable repayment plan, Defendants have systematically and routinely disregarded that commitment and, upon information and belief, systematically used their "expert" call center employees to steer student loan borrowers experiencing long-term distress or hardship into forbearance.

36.    According to the Complaint for Permanent Injunction and Other Relief in *CFPB v. Navient*:

> Navient ... enrolled an immense number of borrowers in multiple consecutive forbearances, even though they had clearly demonstrated a long-term inability to repay their loans.
>
> For example, between January 1, 2010 and March 31, 2015, Navient enrolled over 1.5 million borrowers in two or more consecutive forbearances totaling twelve months or longer. More than 470,000 of these borrowers were enrolled in three consecutive forbearances, and more than 520,000 of them were enrolled in four or more consecutive forbearances. For borrowers enrolled in three or more consecutive forbearances, each forbearance period lasted, on average, six months. Therefore, hundreds of thousands of consumers were continuously enrolled in forbearance for a period of two or three years, or more.
>
> **Regardless of why these borrowers did not enroll in an income-driven repayment plan from the start, their long-term inability to repay was increasingly clear as each forbearance period expired. Yet Navient representatives continued to enroll them in forbearance again and again, rather than an income-driven repayment plan that would have been beneficial for many of them.**
>
> **Enrollment in multiple consecutive forbearances imposed a staggering financial cost on this group of borrowers. At the conclusion of those forbearances, Navient had added nearly four billion dollars of unpaid interest to the principal balance of their loans.** For many of these borrowers, had they been enrolled in an income-driven repayment plan, they would have avoided much or all of their additional charges because the government would have paid the unpaid interest on their subsidized loans in full during the first three years of consecutive enrollment.

3:17-cv-00101-RDM (emphasis added)

37.    Defendants, upon information and belief, acted in a similar or the exact same manner when presented with similar evidence of non-short-term hardships faced by student loan borrowers.

38.    Defendants took these actions because they saved, and continue to save, Defendants significant amounts of money in two ways: (1) Defendants had and continue to have to pay fewer employees to be on the phone with student loan borrowers processing a forbearance versus exploring and explaining enrollment in income driven repayment options, and (2) Defendants have to pay more employees the more income-driven repayment plans they have to process each year.

39.    Defendants compensation policies for its customer service representatives have incentivized them to push borrowers to forbearance without adequately exploring income-driven repayment plans with those borrowers and, in some cases, like Plaintiffs, without ever mentioning income driven repayment plans at all.

40.    Upon information and belief, Defendant did track and currently track, did evaluate and currently evaluate, and, at least in part, compensated and continue to compensate its customer service personnel, in part, based on average call time – the shorter, the better.

41.    Because of the number and complexity of repayment options available for federal loans, a conversation about alternative repayment plans and the borrower's financial situation is usually time-consuming.

42.    As a result, engaging in lengthy and detailed conversations with borrowers about their particular financial situation and trying to determine the income-driven repayment plan that is most appropriate for each borrower would have been financially detrimental for those employees.

43.    Additionally, since a student loan borrower is required to submit a paper or online application, and include certain income tax documentation with that application, to enroll in an income-driven repayment plan, the process of enrolling a borrower in such plans sometimes requires multiple, lengthy conversations with the borrower.

44.     In addition to the paperwork required to enroll a student loan borrower in an income-driven repayment plan, a student loan borrower in such a plan must also complete an annual re-certification form each year to document his or her current income and family size, which is then used to adjust the borrower's monthly income-based payment amount.

45.     Processing this renewal paperwork further increases the necessary man-hours required to operate Defendants' business. Stated differently, having student loan borrowers on income driven plans is more costly to Defendants.

46.     As the volume of income-driven repayment plan applications and renewals received by Defendants increases, Defendants also have to increase the size of its staff to review and process those forms, thereby increasing operating costs.

47.     In sum, counseling borrowers about alternative student loan payment plans and enrolling those student loan borrowers in income-driven repayment plans is costly for Defendants and its employees.

48.     In contrast, enrollment of student loan borrowers in forbearance can often be completed over the phone, in a matter of minutes, and generally without the submission of any paperwork.

49.     As compared to the staff resources and time expenditure required to enroll and renew borrowers in income-driven repayment plans, enrolling borrowers in forbearance is substantially less expensive for Defendants and is or was financially beneficial for its employees.

50.     Consequently, Defendants "experts" have routinely failed to invest the time and effort necessary to help financially distressed student loan borrowers identify and enroll in affordable repayment plans most appropriate for their financial situation.

51.     Consequently, to increase its profits, Defendants routinely engaged in unfair, deceptive, and illegal practices that allows Defendants to profit when student loan borrowers are

placed in a forbearance, rather than appropriately explained and/or placed in an alternative repayment plan, including, but not limited to an income-drive repayment with a low or $0.00 monthly payment.

52.     Through this Complaint, Plaintiff seeks declaratory and injunctive relief, as well as compensation for actual losses, punitive or other exemplary damages, as available under applicable law, as well as attorney's fees and costs of this litigation, and pre- and post-judgment interest, on her own behalf and on behalf of a class of those similarly situated, for the violation of various laws, including but not limited to, the unfair, deceptive, and illegal acts and practices of Defendants.

### PLAINTIFF SPECIFIC ALLEGATIONS

53.     Plaintiff started repayment of her student loans on or about December 14, 2009.

54.     Plaintiff entered into forbearance on or about November 7, 2012.

55.     Plaintiff re-entered repayment of her student loans on or about April 8, 2013.

56.     Plaintiff re-entered forbearance on or about April 25, 2013.

57.     Plaintiff re-entered repayment of her student loans on or about August 12, 2013.

58.     Plaintiff re-entered forbearance on or about September 30, 2013.

59.     Plaintiff re-entered forbearance on or about March 3, 2014.

60.     Plaintiff entered unemployment deferment on or about March 11, 2014.

61.     Plaintiff re-entered repayment on or about September 11, 2014.

62.     Plaintiff called Defendants on multiple occasions seeking information regarding her student loans and repayment options.

63.     On or about September 30, 2013, Plaintiff changed jobs which resulted in Plaintiff receiving considerably less income.

64.     Due to this, on or about September 30, 2013, Plaintiff called Defendants.

65.     During a phone conversation with Defendants, Plaintiff was given the option of forbearance or deferment due to her current situation.

66.    Plaintiff was not informed of alternative or income driven repayment options.

67.    These other alternative or repayment options would have likely allowed Plaintiff a $0.00 or extremely low monthly payment, and would have counted as qualifying payments towards loan forgiveness.

68.    Instead, Plaintiff was, pursuant to Defendants' policy and practice, steered into forbearance.

69.    On or about December 31, 2013, Plaintiff became unemployed.

70.    On or about March 10, 2014, Plaintiff called Defendants.

71.    During a phone conversation with Defendants, Plaintiff was given the option of forbearance or deferment due to her current situation.

72.    Plaintiff was not informed of alternative or income driven repayment options.

73.    These other alternative or repayment options would have likely allowed Plaintiff a $0.00 or extremely low monthly payment, and would have counted as qualifying payments towards loan forgiveness.

74.    Instead, Plaintiff was, pursuant to Defendants' policy and practice, steered into forbearance.

## CLASS ACTION ALLEGATIONS

75.    Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and classes of persons similarly situated for declaratory, injunctive, and monetary relief, and defined as:

**Illinois Consumer Fraud Class**
All individuals who reside in Illinois or who entered into student loan contracts in Illinois, who since February 21, 2014, were subjected to Defendants' unfair and deceptive conduct, as further described in Count I, and were placed in forbearance without being advised of alternate repayment options.

**Illinois Constructive Fraud Class**

All individuals who reside in Illinois or who entered into student loan contracts in Illinois, who since February 21, 2012 were subjected to Defendants' unfair, misleading, and/or deceptive conduct, as further described in Count II, who were placed in forbearance without being advised of alternate repayment options.

76.     Specifically excluded from the Illinois Consumer Fraud Class and the Illinois Constructive Fraud Class, (collectively the "Classes") are: (a) any officers, directors, or employees of Defendants, or any of their subsidiaries; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; and (d) any juror selected to hear this case.

77.     Plaintiff asserts claims against Defendants, individually and on behalf of all class and members for violations of the law as set forth below.

78.     The members of the Classes are ascertainable from objective criteria.

79.     If necessary to preserve the case as a class action, the Court itself can redefine the Classes, create additional classes or sub-classes, or both.

80.     The requirements of Rule 23(a) are satisfied for the proposed Class because the members of the proposed Classes are so numerous and geographically dispersed that joinder of all its members is impracticable. Although the exact number and identity of each Class member is unknown at this time, there are believed to be at least thousands of potential Class members. Therefore, the "numerosity" requirement of Rule 23(a)(1) is met.

81.     The commonality requirement of Rule 23(a)(2) is satisfied because there are questions of law or fact common to Plaintiff and the other members of the proposed Classes. Among those common questions of law or fact are:

a.      whether Defendants have a common policy and practice of steering student loan borrowers into forbearance;

b.      whether Defendants have a common policy and practice of not disclosing or adequately describing alternative repayment options to student loan borrowers;

c.      whether Defendants have a fiduciary relationship with Plaintiff and Class Members;

d.      whether Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act and harmed Plaintiff and Class Members; and

e.      whether Defendants engaged in constructive fraud and harmed Plaintiff and Class Members.

82.     Plaintiff's claims are typical of the claims of the proposed Classes that she seeks to represent, as described above, because they arise from the same course of conduct by Defendants and are based on the same legal theories. Further, Plaintiff seeks the same form of relief for herself and the proposed Classes. Therefore, the "typicality" requirement of Rule 23(a)(3) is satisfied.

83.     Because her claims are typical of the proposed Classes that Plaintiff seeks to represent, Plaintiff has every incentive to pursue those claims vigorously. Plaintiff has no conflicts with, or interests antagonistic to the proposed Classes. Plaintiff, a victim of unscrupulous student loan servicing and general business practices, is committed to the vigorous prosecution of this action, which is reflected in her retention of competent counsel experienced in complex and challenging litigation.

84.     Plaintiff's counsel satisfies the requirements of Rule 23(g) to serve as counsel for the proposed Class. Plaintiff's counsel (a) has identified and thoroughly investigated the claims set forth herein; (b) has previously been lead counsel in student loan servicer litigation; (c) has been involved in complex class litigation; (d) has extensive knowledge of the applicable law; and (d) has the resources to commit to the vigorous prosecution of this action on behalf of the proposed Class. Accordingly, Plaintiff satisfies the adequacy of representation requirements of Rule 23(a)(4).

85.     In addition, this action meets the requirements of Rule 23(b)(2). Defendants have acted or refused to act on grounds generally applicable to Plaintiff and others similarly situated, making final injunctive or corresponding declaratory relief with respect to the proposed Classes appropriate.

86.     This action also meets the requirements of Rule 23(b)(3). Common questions of law or fact, including those set forth above, exist as to the claims of all members of the proposed Class

and predominate over questions affecting only individual Class members, and a class action is superior – if not the only method – for the fair and efficient adjudication of this controversy.

87.     Class treatment will permit large numbers of similarly situated student loan borrowers to prosecute their respective claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

88.     This action is manageable as a class action. Notice may be provided to members of the proposed Class by first-class mail and through the alternative means, including electronic mail (email), internet postings including banner ads, distribution through social media, including sponsored postings on Facebook and Twitter, and by publication. Thus, the superiority and manageability requirements of Rule 23(b)(3) are satisfied.

## COUNT I – ON BEHALF OF THE ILLINOIS CONSUMER FRAUD CLASS
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS
## PRACTICES ACT

89.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

90.     Pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, "merchandise" includes "any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services." 815 Ill. Comp. Stat. 505/1(b).

91.     Defendants' services are "merchandise" as defined by 815 Ill. Comp. Stat. 505/1(b).

92.     Pursuant to 815 Ill. Comp. Stat. 505/2:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section

consideration shall be given to the interpretations of the Federal Trade Commission
and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act.

93.    Defendants engaged in numerous unfair acts and practices in the servicing of

Plaintiff's and Illinois Consumer Fraud Class Members loans, including:

a.    Holding themselves out to be experts in student loan servicing issues or offering "expert" help;

b.    Holding themselves out as working on Plaintiff's and Class Members' behalves, when they worked for the benefit of Defendants;

c.    Holding themselves out as understanding all student loan options, and offering those options to student loan borrowers, including Plaintiff and Class Members;

d.    Offering forbearance as a recommended or best option to struggling student loan borrowers who could have enrolled in a much better repayment plan;

e.    Failing to provide struggling student loan borrowers all of their options, or discussing income driven repayment plans prior to enrolling student loan borrowers in forbearance;

f.    Failing to follow up with student loan borrowers after a first forbearance and explaining or alerting student loan borrowers to other, more advantageous repayment options; and

g.    Systematically steering struggling student loan borrowers, including Plaintiff and Class Members into forbearance without explaining, or even identifying other, better repayment options, based in part of Defendants' failure to adequately staff its operations or by providing other incentives for quick call times.

94.    Defendants' practices, as set forth above, were unfair in that:

a.    The practices were immoral, oppressive and unscrupulous in that they were imposed upon student loan debtors with no meaningful choice, imposed an unreasonable burden on student loan borrowers and was so oppressive as to leave student loan borrowers with little alternative but to submit to the practices. Student loan borrowers had no control over the Defendants' acts, and

b.    Student loan borrowers cannot reasonably avoid the injury caused by Defendants', as Defendants are in ultimate control of student loan payment processing, hold themselves out as working in the best interest of the student loan borrowers, hold themselves out as experts who have all of the student loan borrowers information available to them and will work for the student

loan borrower to help the student loan borrower with repayment options, and control the information provided by Defendants' employees to struggling student loan borrowers, potentially incentivizing not supplying alternative options to forbearance.

95.    Defendants' unfair practices and conduct were directed toward Plaintiff and other Illinois Consumer Fraud Class Members.

96.    Defendants' intended for student loan borrowers, including Plaintiff and Illinois Consumer Class Members, to rely on Defendants' acts and practices, Defendants' claims of "expert" status, Defendants' claims of working for the interest of student loan borrowers, and Defendants' disclosed repayment options and recommendations (or lack thereof).

97.    Defendants' also intended for student loan borrowers, including Plaintiff and Illinois Consumer Fraud Class members, to rely on.

98.    Defendants' unfair and deceptive practices occurred during the course of conduct involving trade or commerce, specifically the servicing and collection of student loan debts.

99.    Plaintiff and Illinois Consumer Fraud Class Members incurred damages due to the misrepresentations and omissions of Defendants, who held themselves out as "experts," working on the behalf of struggling student loan borrowers, and helping them make sure everything goes as smoothly as possible.

100.    Plaintiff's and Illinois Consumer Fraud Class Members' damages were directly and proximately caused by Defendants' unfair acts and practices, as alleged herein.

101.    Defendants' conduct was addressed to the market generally and otherwise implicates consumer protection concerns and, therefore, a consumer nexus exists in that:

      a.    Defendants' acts and practices in servicing and collecting student loans, including claims of "expert" status and claims of working on the behalf of student loan borrowers were  directed to all individuals whose loans were serviced by Defendants; and

b. Defendants' acts and practices otherwise implicate consumer protection concerns including, but not limited to, promoting fair and upright business practices.

102. Plaintiff, an Illinois resident is authorized to bring a private action under the Illinois Consumer Fraud and Deceptive Businesses Practices Act pursuant to 815 Ill. Comp. Stat. 505/10(a).

103. In sum, Plaintiff and the Illinois Consumer Fraud Class Members were subjected to Defendants' misrepresentations regarding their "expert" status, their access to and understanding of Plaintiff's and Class Members' situations, their work for the benefit of Plaintiff and Class Members, and Defendants policy and practice of steering student loan borrowers into forbearance or deferment while omitting alternative and income driven repayment options. This was done during (and upon information and belief, before) the Illinois Consumer Fraud Class Period, February 23, 2014 to the present, with Plaintiff and Class Members residing in Illinois, or who had signed loan contracts in Illinois, generally via phone or electronic mail (email), by and through customer service representatives giving false information (that forbearance and deferment were the student loan borrowers only option) or purposefully failing to disclose, discuss, or counsel Plaintiff, Class Members and other similarly situated loan borrowers income driven or other alternative payment options.

104. As alleged herein, Defendants' conduct was willful and intentional and done with evil motive or reckless indifference to the rights of others.  Punitive damages are thus warranted.

105. Reasonable attorneys' fees and costs should be awarded pursuant to 815 Ill. Comp. Stat. 505/10a.

## COUNT II – ON BEHALF OF THE FEDERAL CLASS
## CONSTRUCTIVE FRAUD

106. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

107.    Defendants, acting as Plaintiff's and Illinois Constructive Fraud Class Members' student loan servicer, have a confidential and/or fiduciary relationship with Plaintiff and all Illinois Constructive Fraud Class Members, as Defendants are privy to student loan borrowers private, confidential information, including family size and arrangements, income information, and tax information, and Defendants represent to student loan borrowers that Defendants are "experts," have access to student loan borrowers information (and therefore unique situation), and act for the benefit of student loan borrowers, including providing student loan borrowers information.

108.    As such, Defendants act in a position of advisor or counselor as reasonably to inspire confidence in student loan borrowers, taking the role of fiduciary or quasi-fiduciary.

109.    Defendants, either explicitly or impliedly indicate to student loan debtors that they will act in good faith and in the best interest of the student loan borrower.

110.    The relative position of the Defendants to student loan borrowers, including Plaintiff and Illinois Constructive Fraud Class Members, is such that Defendants have the power and means to take advantage of or exercise undue influence over the student loan borrowers.

111.    To increase its profits, rather than acting with scrupulous fairness and good faith in their dealings with student loan borrowers, and refraining from using their position to student loan borrower's detriment and their own advantage, Defendants made representations or omitted material information, performed certain conduct, and breached their confidential or fiduciary relationship with student loan borrowers, including Plaintiff and Illinois Consumer Fraud Class Members.

112.    Defendants accomplish this breach of a confidential or fiduciary relationship by misrepresenting, concealing, or omitting the detrimental effects of entering or continuing in forbearance, omitting other alternative repayment options, including income driven repayment options that would allow $0.00 monthly payments holding themselves out as "experts," holding themselves out as having all student loan borrowers information, and holding themselves out as

working in the best interest of student loan borrowers, including Plaintiff and the Illinois Constructive Fraud Class Members.

113.    As such, Defendants operated in a way most beneficial to themselves and, often, in a manner directly opposite of that which would be beneficial to the student loan borrower, despite Defendants holding themselves out as "experts," knowledgeable about student loan borrowers' situations, and acting in the best interest of student loan borrowers.

114.    Defendants' fraudulent actions were directed toward Plaintiff and Illinois Constructive Fraud Class Members.

115.    Defendant intended for student loan borrowers, including Plaintiff and Illinois Constructive Fraud Class Members, to rely on their actions, statements, omissions, and fraudulent misrepresentations in determining how to proceed with paying (or forbearing) their student loan payments.

116.    Defendants held themselves out to all student loan borrowers as "experts," held themselves out as knowledgeable regarding student loan borrowers situations, and held themselves out as working on behalf and to the benefit of student loan borrowers.

117.    Defendants also intended for student loan borrowers, including Plaintiff and Illinois Constructive Fraud Class Members, to rely on their documents, correspondence, phone conversations, "expert" advice, website, and potentially other documents and communications.

118.    These communications were often not only wrong, but made fraudulently or contained material omissions.

119.    As such, Defendants intended for student loan borrowers to rely on their actions and fraudulent misrepresentations and, therefore, create, or cause a likelihood of, confusion or of misunderstanding about the "best" way for the student loan borrowers to proceed with repayment or forbearance of their student loans, including omitting information regarding income driven or

alternative repayment options, signaling to student loan borrowers that forbearance was the best way to proceed.

120.    Defendants' actions occurred during the presentation of information involving loan servicing and options available to Plaintiff after becoming unemployed and unable to pay her student loans. The information was presented over the telephone in October 2013.

121.    Plaintiff's and Illinois Constructive Fraud Class Members' damages were directly and proximately caused by Defendant's breach of a confidential or fiduciary relationship.

122.    As such, Plaintiff and all others similarly situated have been damaged as a direct and proximate result of Defendants' willful, intentional, and outrageous conduct, warranting punitive damages for Defendants' irreprehensible behavior and injunctive relief to prevent Defendants from inaccurately describing current loan payment options, including alternative or income driven repayment plans that could offer payments of as low as $0.00 per month, and steering student loan borrowers into forbearance.

## COUNT III
### NEGLIGENT MISREPRESENTATION

123.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

124.    To increase their profits, Defendants, in the course of their business, profession or employment, or any other transaction in which they have a pecuniary interest, supplied false information or omitted material information for the guidance of student loan borrowers.

125.    Defendants accomplish this by misrepresenting their "expert" status, misrepresenting that they work for the benefit of student loan borrowers, and misrepresenting or omitting material information, including alternative or income driven student loan repayment options which may have offered a $0.00 monthly repayment amount.

126.   Some of Defendants' misrepresentations and/or omissions include, but are not limited to:

     a)     Defendants claim to be "experts" regarding student loan;

     b)     Defendants work for the benefit of student loan borrowers;

     c)     Forbearance or deferment are the only options for struggling student loan borrowers; and

     d)     Failure to disclose, discuss, or counsel student loan borrowers on alternative and income driven repayment plans.

     e)     Offering forbearance as a recommended or best option to struggling student loan borrowers who could have enrolled in a much better repayment plan;

     f)     Failing to provide struggling student loan borrowers all of their options, or discussing income driven repayment plans prior to enrolling student loan borrowers in forbearance;

     g)     Failing to follow up with student loan borrowers after a first forbearance and explaining or alerting student loan borrowers to other, more advantageous repayment options; and

     h)     Systematically steering struggling student loan borrowers, including Plaintiff and Class Members into forbearance without explaining, or even identifying other, better repayment options, based in part of Defendants' failure to adequately staff its operations or by providing other incentives for quick call times

127.   Upon information and belief, Defendants employed a policy and practice, including training all employees, to steer Plaintiff and other struggling student loan borrowers into forbearance through presenting misleading information or failing to disclose information, including the existence and benefits of alternative and income driven repayment plans.

128.   As such, Defendants are operating in a way most beneficial to themselves and, often, in a manner directly opposite of best interest for the student loan borrower, including Plaintiff, despite holding themselves out as acting in the best interest of the student loan borrower.

129.   Defendants' misrepresentations were directed toward Plaintiff.

130.     Defendants failed to exercise reasonable care or competence in obtaining or communicating the information.

131.     Defendants intended for student loan borrowers, including Plaintiff, to rely on their misrepresentations and omissions in determining whether to enter forbearance (versus an undisclosed alternative or income driven repayment plan).

132.     Defendants' also intended for student loan borrowers, including Plaintiff, to rely on their documents, correspondence, emails and website as true and correct, even though the website contained vague, inaccurate, and misleading information.

133.     As such, Defendants intended for student loan borrowers, including Plaintiff, to rely on their misrepresentations and omissions and, therefore, create, or cause a likelihood of, confusion or of misunderstanding about the "best" path for the struggling student loan borrowers, including Plaintiff, what repayment options were available, what repayment options were beneficial, and how different choices would affect Plaintiff.

134.     Defendants' misrepresentations and omissions occurred during the presentation of information involving services to collect student loan debt.

135.     Plaintiff relied on Defendants misrepresentations and omissions and incurred damages due to (1) the misleading, vague, incomplete, and inaccurate information provided by Defendants, (2) being advised that forbearance was her only option, and not being able to receive a $0.00 or low payment amount under an income driven repayment plan, and (3) forgoing months of qualifying payments under an income driven plan due to Defendants misrepresentations and omissions.

136.     Plaintiff's damages were directly and proximately caused by Defendants' fraudulent misrepresentations.

137.    As such, Plaintiff has been damaged as a direct and proximate result of Defendants' conduct, warranting punitive damages for Defendants' irreprehensible behavior and injunctive relief to prevent Defendants from misrepresenting available payment options and omitting alternative and income driven student loan repayment options.

138.    Defendants' conduct was outrageous and done with a bad motive or with reckless indifference to the interests of others. Punitive damages are thus warranted, in order to deter Defendants and other from engaging in similar conduct in the future, as well as to provide additional compensation, retribution and an incentive to prevent injustices that might otherwise go unredressed.

<strong>PRAYER FOR RELIEF</strong>

Plaintiffs, on behalf of herself and all others similarly situated, request:

A. Entry of preliminary and permanent injunctions providing that Defendants shall be enjoined from:

    i. Providing incomplete, vague or misleading information about student-loan repayment options including the availability of income-driven student loan plans;

    ii. Holding themselves out as "experts;"

    iii. And holding themselves out as acting in the best interest of student-loan borrowers when they do not; and

B. An Order certifying this matter as a class action pursuant to FED. R. CIV. P. 23;

C. Entry of judgment finding:

    i. Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act;

    ii. Defendants are guilty of constructive fraud; and

    iii. Defendants are guilty of negligent misrepresentation; and

D. Monetary damages including compensatory, exemplary, and punitive damages to which Plaintiffs, Illinois Consumer Fraud Class Members and Illinois Constructive Fraud Class Members are entitled and will be entitled at the time of trial, in an amount exceeding $5,000,000;

E. Pre- and post-judgment interest;

F.   The costs of this action;

G.   Reasonable attorneys' fees; and

H.   Such other and further relief as the Court deems proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues so triable.

Respectfully submitted,

Dated:  February 21, 2016

By: */s/ Brandon M. Wise*
Brandon M. Wise – MO Bar No. 67242
Paul A. Lesko – MO Bar No. 51914
PEIFFER ROSCA WOLF
ABDULLAH CARR & KANE, APLC
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825
Email: bwise@prwlegal.com
Email: plesko@prwlegal.com

*COUNSEL FOR PLAINTIFF AND THE CLASSES*