IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| NICOLE DENISE NELSON, | ) | |
|---|---|---|
| individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:17-CV-00183-NJR-SCW |
| vs. | ) ) ) | |
| GREAT LAKES EDUCATIONAL LOAN SERVICES, INC., and DOES, 1-10, | ) ) ) | |
| Defendants. | | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on the Motion to Strike and to Dismiss Plaintiff's First Amended Class Action Complaint filed by Defendant Great Lakes Educational Loan Services, Inc. ("Great Lakes") (Doc. 29). For the reasons set forth below, the motion is granted.

### BACKGROUND

Plaintiff Nicole Nelson is an Illinois resident who began repaying her student loans on December 14, 2009 (Doc. 24, ¶¶ 1, 79). Defendant Great Lakes is Nelson's student loan servicer (*Id.* at ¶ 149). As a loan servicer, Great Lakes is responsible for managing borrowers' accounts, processing payments, assisting borrowers, and communicating with borrowers about the repayment of their loans (*Id.* at ¶ 1).

Federal student loan borrowers have a number of repayment plans available to them. Nelson alleges that federal student loan borrowers who are unable to afford their current payment can change to another repayment plan at any time, including an

"income-driven" repayment plan. These income-driven plans set the borrower's monthly student loan payment at only a percentage of his or her "discretionary" income (*Id.* at ¶ 16). Income-driven repayment plans can offer borrowers extended payment relief, as well as other benefits such as a $0 monthly payment that still counts as a qualifying payment toward loan forgiveness (*Id.* at ¶ 18-19).

The United States Department of Education has advised borrowers to contact its student loan servicer before applying for any alternative repayment plan or forbearance (*Id.* at ¶ 32). Likewise, Great Lakes repeatedly encouraged borrowers experiencing financial hardship to contact it for assistance in evaluating the various alternative repayment options and not to contact others for student loan advice (*Id.* at ¶ 33). For example, Great Lakes' website states: "You don't have to pay for student loan services or advice. Our expert representatives have access to your latest student loan information and understand all of your options." (*Id.* at ¶ 34). Nevertheless, Nelson claims, despite attempting to publicly assure borrowers that Great Lakes will help them enroll in an appropriate, affordable repayment plan, it systematically and routinely disregarded that commitment and used its "expert" call center employees to steer student loan borrowers experiencing long-term financial distress or hardship into forbearance and deferment. Nelson claims this practice delayed borrowers' entry into alternative or income-driven repayment plans.

Nelson asserts that Great Lakes took these actions to save money in two ways. First, it had to pay fewer employees to be on the phone with student loan borrowers processing a forbearance or deferment than it would if employees had to explain

enrollment in income-driven repayment options, as those options take significantly longer to explore (*Id.* at ¶ 51, 70). Likewise, Great Lakes would have to pay more employees to review and process income-driven repayment plan applications and yearly renewals, thereby increasing operating costs (*Id.* at ¶¶ 51, 72). Nelson further avers that Great Lakes incentivized its employees to push borrowers into forbearance without exploring income-driven repayment plans (*Id.* at ¶ 52). Specifically, Great Lakes tracked, evaluated, and compensated its customer service personnel, in part, based on average call time (*Id.* at ¶ 53). The shorter the call, the more compensation employees received (*Id.*).

In the process of paying her own student loans, Nelson experienced financial hardship and called Great Lakes on multiple occasions to obtain information regarding repayment options (*Id.* at ¶¶ 79-87). Each time, Nelson was routed to a call center employee who, she alleges, followed a script that was designed to steer her into forbearance (*Id.* at ¶ 93). As a result, Nelson was enrolled in forbearance four times by Great Lakes' "expert" call center employees who led her to believe that was her best option (*Id.* at ¶¶ 92, 96, 99). She also entered unemployment deferment once as a result of her call to Great Lakes. Nelson claims Great Lakes' "expert" employees did not inform her of other alternative repayment options that likely would have allowed her to make much lower monthly payments (*Id.* at ¶ 109).

On May 15, 2017, Nelson filed the First Amended Class Action Complaint, alleging Great Lakes and certain John Does deceptively and systematically deterred her from obtaining access to income-driven repayment plans and instead steered her and

other student loan borrowers into forbearance (*Id.* at ¶¶ 6, 130(g)). Nelson alleges Great Lakes and the John Doe Defendants engaged in "numerous unfair acts and practices," including holding themselves out to be experts, recommending forbearance to borrowers, and failing to inform borrowers of all options—all in an effort to save Great Lakes significant amounts of money (*Id.* at ¶¶ 51, 130). Nelson claims she relied upon the information provided by Great Lakes, which caused her to go into forbearance rather than enter a repayment plan better suited for her circumstances (*Id.* at ¶¶ 135-36, 139).

Nelson seeks to represent two classes of persons made up of student loan borrowers who have been similarly placed in forbearance without being adequately informed of alternative repayment options (*Id.* at ¶ 113). Specifically, Nelson has identified these two classes as:

**Illinois Consumer Fraud Class**
All individuals who reside in Illinois or who entered into student loan contracts in Illinois, who since February 21, 2014, were subjected to Defendants' unfair and deceptive conduct, as further described in Count I, and were placed in forbearance without being advised of alternate repayment options.

**Illinois Constructive Fraud Class**
All individuals who reside in Illinois or who entered into student loan contracts in Illinois, who since February 21, 2012, were subjected to Defendants' unfair, misleading, and/or deceptive conduct, as further described in Count II, who were placed in forbearance without being advised of alternate repayment options.

Nelson, individually and on behalf of the class mentioned above, asserts two claims under Illinois law.[1] In Count I, she alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act on behalf of the Illinois Consumer Fraud Class. In Count II, Nelson alleges constructive fraud on behalf of the Illinois

---

[1] Nelson does not allege that Great Lakes violated any federal disclosure requirements, as there is no private right of action under the Higher Education Act.

Constructive Fraud Class. Nelson also alleges a third count, negligent misrepresentation, regarding statements made specifically to her.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must "plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "In reviewing the sufficiency of a complaint under the plausibility standard, [a court must] accept the well-pleaded facts in the complaint as true, but [it] 'need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Federal Rule of Civil Procedure 12(f) governs whether to strike matters from a pleading. Under Rule 12(f), upon a motion or upon its own initiative, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). For this reason, this

Court and others have held that a party must show prejudice to succeed on a motion to strike. *See, e.g., Anderson v. Bd. of Educ. of Chi.*, 169 F. Supp. 2d 864, 867 (N.D. Ill. 2001); *see also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). Prejudice exists where the allegation confuses the issues or is so lengthy and complex that it puts an undue burden on the opposing party. *Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997). The Court should not strike matter from a pleading pursuant to Rule 12(f) "unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *See* 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d ed.); *accord Anderson*, 169 F. Supp. 2d at 867-68. The burden on a motion to strike is upon the moving party. *See Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F. Supp. 2d 1028 (N.D. Ill. 1998).

### Discussion

Great Lakes has moved to strike twenty eight factual allegations cited in the complaint that are allegedly copied, verbatim, from another lawsuit, as well as twelve factual allegations derived from anonymous internet postings on www.glassdoor.com. Great Lakes further moves to dismiss Nelson's claims because they are preempted by federal law and because she fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 29). Because the Court finds Defendants' express preemption argument most persuasive, the Court first addresses that issue.

*Preemption*

As an initial matter, Nelson has asserted that Defendants' preemption argument is not properly raised on a motion to dismiss, as preemption is an affirmative defense

(Doc. 33, p. 14). That proposition is not, however, uniformly true. "Preemption may be [a] proper ground for a dismissal pursuant to Rule 12(b)(6)." *French v. STL Distribution Services, LLC*, No. 10-511-GPM, 2010 WL 4684016, at *1 (S.D. Ill. Nov. 10, 2010). "A complaint that, on its face, establishes federal preemption is properly dismissed pursuant to Rule 12(b)(6)." *Green v. Charter One Bank, N.A.*, No. 08 C 1684, 2010 WL 1031907, at *1 (N.D. Ill. Mar. 16, 2010); *see also Currie v. Diamond Mortgage Corp. of Ill.*, 859 F.2d 1538, 1542 (7th Cir. 1988). Thus, if the complaint on its face establishes that Nelson's claims are preempted, then dismissal is appropriate.

Great Lakes asserts that Nelson's state law claims are barred under the Supremacy Clause of the United States Constitution because the manner in which Great Lakes interacts with borrowers—including how it provides information on alternative payment options—is regulated by the federal government pursuant to statute, regulations, and its federal-contracting authority. Specifically, the Department of Education, which administers the Higher Education Act ("HEA") and procures the services of federal contractors like Great Lakes, has promulgated comprehensive regulations prescribing the disclosures for repayment options provided to borrowers. In addition, the Department of Education exercises extensive oversight over contractors like Great Lakes that service student loans on its behalf. Great Lakes argues Nelson's state law claims are an attempt to impose additional disclosure requirements—that is, to require more of Great Lakes than is required by the HEA. As a result, Great Lakes asserts, Nelson's claims are preempted.

Federal law is considered "the supreme Law of the Land." U.S. Cont. art. VI, cl. 2. As a result, when federal and state laws conflict, "the conflicting state law provisions [are] without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). Federal preemption of a state statute occurs when: "(1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (citing *Tocher v. City of Santa Ana*, 219 F.3d 1040, 1045 (9th Cir. 2000); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)).

"The Supreme Court has made clear that Congress may indicate its intent to displace state law through express language." *Chae*, 593 F.3d at 942 (citing *Altria Group, Inc. v. Good*, 555 U.S. 70, 129 S.Ct. 538, 543 (2008)). When Congress enacts an express preemption provision, the Court must interpret the provision and "identify the domain expressly pre-empted by that language." *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996)). To do so, the Court must examine the text of the provision, the surrounding statutory framework, and Congress' stated purpose in enacting the statute. *Id.* "If the statute contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).

In this case, the relevant statute provides: "Loans made, insured, or guaranteed pursuant to a program authorized by title IV of the Higher Education Act of 1965 shall not be subject to any disclosure requirements of any State law." 20 U.S.C. § 1098g. 34 C.F.R. § 682.205, titled "Disclosure requirements for lenders," then regulates the specific disclosures that lenders must make at specific times. Thus, to determine whether Nelson's claims are preempted, the Court must examine whether her claims involve "disclosures."

The parties agree that the word "disclosure" is undefined by the HEA. Therefore, Defendants argue, the Court must construe it in accordance with its ordinary dictionary definition: "The act or process of making known something that was previously unknown; a revelation of facts." BLACK'S LAW DICTIONARY (10th ed. 2014). Nelson asserts that the regulations themselves, as well as supporting case law, provide a "working definition" of disclosure. She argues that § 682.205 provides for "disclosures" as well as "contacts" and "other communications" a lender/loan servicer may have with a borrower. *See* 34 C.F.R. § 682.205 (a)(4)(ii) (certain disclosures are not required "if the borrower's difficulty has been resolved through <u>contact</u> with the borrower resulting from an earlier disclosure or <u>other communication</u> between the lender and the borrower") (emphasis added). Thus, not every contact a lender has with a borrower is a "disclosure." And if the contact is not a "disclosure," she argues, then there can be no preemption.

The Court finds aspects of both parties' definitions persuasive. Defendants' dictionary definition of disclosure is the ordinary meaning of the word. The Court also

agrees that a lender can probably communicate with a borrower without triggering any disclosure requirements as provided in § 682.205. The question, however, is not whether every contact or communication is a disclosure under federal law. Rather, the question before the Court is whether Nelson is trying to force any state law disclosure requirements onto Great Lakes. Construing the statutory framework in conjunction with the plain meaning of the word "disclosure," it appears Congress intended § 1098g to preempt any state law requiring lenders to reveal facts or information not required by federal law.

While the Seventh Circuit has not addressed § 1098g and preemption, the Ninth Circuit has examined the statute and found it to expressly preempt state disclosure requirements under California's Unfair Competition Law and Consumer Remedies Act. *Chae*, 593 F.3d at 942. In *Chae,* the plaintiffs claimed that Sallie Mae employed "unfair" and "fraudulent" business practices related to the first repayment date and its interest calculation. *Id.* The plaintiffs alleged the practices constituted an unfair or deceptive practice under California's Consumer Legal Remedies Act because they "misrepresent[ed]" that the student loans "confer rights, remedies, and obligations" that do not exist. *Id.* The Ninth Circuit interpreted the plaintiffs' misrepresentation claims as, "at bottom," improper-disclosure claims. *Id.* Because the plaintiffs did not contend that California law prevented Sallie Mae from employing the loan-servicing practices at issue, the court considered the allegations, in substance, to be "a challenge to the allegedly-misleading method Sallie Mae used to communicate with the plaintiffs about its practices. In this context, the state-law prohibition on misrepresenting a business

practice 'is merely the converse' of a state-law requirement that alternate disclosures be made." *Id.* at 942-43 (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 527 (1992)).

Other courts reviewing the express preemption clause in § 1098g have held that where a state law claim is "rooted in a failure to disclose information required by the HEA," such claim would likely be expressly preempted. *Linsley v. FMS Inv. Corp.*, No. 3:11cv961, 2012 WL 1309840, *4 (D. Conn. Apr. 17, 2012). In *Brooks v. Salle Mae, Inc.*, a state court case cited by Nelson, the plaintiff alleged that Sallie Mae misrepresented the documentation required to determine eligibility for economic deferment and misrepresented that she had to pay all late fees before she could enter economic deferment. *Brooks v. Sallie Mae, Inc.*, No. FSTCV096002530S, 2011 WL 6989888, at *6 (Conn. Super. Ct. Dec. 20, 2011). Citing *Chae* as authority, the court held that the plaintiff's misrepresentation claims were, in fact, disguised improper disclosure claims and were therefore preempted. *Id.*

While none of these cases are binding on this Court, the Court nonetheless finds them persuasive in determining whether the claims made by Nelson involve "disclosures" and are therefore preempted by federal law. Great Lakes argues that Nelson's claims involve "disclosures" because she alleges Great Lakes made various omissions and misrepresentations by failing to inform borrowers of their right to enter an income-driven repayment plan. Great Lakes contends that saying it "failed to inform" is just another way of saying it "failed to disclose" information. Because what Great Lakes is required to disclose is regulated by federal law, *see* 34 C.F.R. § 682.205, Nelson's state law claims are preempted.

Nelson admits that 20 U.S.C. § 1098g preempts state law from governing disclosure requirements and that the regulations contained in 34 C.F.R. § 682.205 govern the disclosures required of lenders. She argues, however, that she does not seek to impose any additional "disclosure" requirements because the alleged wrongful activity occurred during Great Lakes' "contacts" or "other communication" with borrowers. In other words, Nelson asserts her claims are not preempted because she's alleging Great Lakes failed to disclose information at times *not specified* by § 682.205. But what Nelson is essentially saying is: under Illinois state law, Great Lakes should have disclosed additional information to me and other borrowers. Nelson is attempting to require more of Great Lakes than is required by the HEA.

As a result, Nelson's allegations in Count I that Great Lakes "failed to provide" or "failed to offer" borrowers all of their options, "failed to discuss" income-driven repayment plans prior to enrolling borrowers in forbearance, and "failed to follow up or alert" student loan borrowers to more advantageous repayment options after a first forbearance are preempted, as they are no different than a claim that Great Lakes failed to make proper disclosures. *See Chae*, 593 F.3d at 942. Likewise, Nelson's claims in Count I that Great Lakes' employees held themselves out to be experts working on a borrower's behalf, held themselves out as understanding and offering all student loan options, and offered forbearance as a "best option" to struggling borrowers who could have enrolled in a much better plan are also disguised failure-to-disclose claims. *Id.* The converse of these allegations is that Great Lakes' employees should have disclosed (or revealed) they were not "experts" and were working on behalf of Great Lakes, should have disclosed

all options to borrowers, and should have disclosed that forbearance may not be the "best option" for all borrowers. Finally, Nelson's allegation that Great Lakes provided employees with scripts to steer struggling student loan borrowers into forbearance without explaining, or even identifying other, better repayment options is merely an allegation that Great Lakes should have disclosed alternative repayment options.

The conclusion that Nelson's claims in Count I involve disclosures is supported by the elements of the cause of action itself. As in *Chae*, Nelson has pointed to no Illinois state law prohibition against the underlying practice at issue, *i.e.*, "steering" a customer toward a plan that is more favorable to the business. Rather, she brings her claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, which requires an intent that the consumer rely on the concealment or omission of a material fact. *See* 815 ILCS 505/2 (stating it is unlawful, in the conduct of any trade or commerce, to misrepresent, suppress, conceal, or omit any material fact, with the intent that others rely on the concealment, suppression, or omission of such material fact).

In Count II, Nelson alleges constructive fraud on behalf of the Illinois Constructive Fraud Class (*Id.* at ¶¶ 148-168). In this claim, Nelson asserts Great Lakes and the Doe Defendants breached an alleged confidential or fiduciary relationship by misrepresenting, concealing, or omitting the detrimental effects of entering or continuing in forbearance, omitting other alternative repayment options, holding themselves out as "experts," holding themselves out as having all student loan borrowers' information, and holding themselves out as working in the best interest of student loan borrowers (*Id.* at ¶ 154). Nelson alleges Defendants intended for student

loan borrowers to rely on these omissions and misrepresentations in determining how to proceed with paying (or forbearing) their student loan payments (*Id.* at ¶ 157). As a result, Defendants delayed Nelson's and the putative class members' enrollment in alternate or income-driven repayment plans, causing them actual damages.

Count II is also preempted, as it is, "at bottom," a claim that Great Lakes failed to disclose additional information in its correspondence and on its website. Nelson essentially claims Great Lakes breached an alleged fiduciary duty by failing to disclose information relevant to choosing a repayment plan, disclosures that are expressly regulated by § 682.205.

Finally, in Count III, Nelson alleges negligent misrepresentation as to statements made specifically to her (*Id.* at ¶¶ 169-85). Nelson claims Defendants misrepresented or omitted the same material information alleged in Counts I and II, that Great Lakes had a policy of steering borrowers such as herself into forbearance, and that she relied on these misrepresentations and omissions in determining whether to enter forbearance (*Id.* at ¶ 172). Again, this claim involves information that Nelson asserts Great Lakes should have disclosed to her and, as such, it is expressly preempted.

Having found Nelson's claims as pleaded to be expressly preempted, the Court need not determine whether conflict preemption also applies or whether Nelson has stated a claim pursuant to Rule 12(b)(6). Defendants' Motion to Strike is also denied as moot.

## Conclusion

Because Nelson's claims are expressly preempted, the Motion to Dismiss filed by Great Lakes Educational Loan Services, Inc., and the John Doe Defendants (Doc. 29) is **GRANTED,** and the Motion to Strike is **DENIED as moot.** The First Amended Class Action Complaint is **DISMISSED without prejudice**.

In an abundance of caution, the Court will grant Nelson leave to file a Second Amended Class Action Complaint, on or before **January 19, 2018**. Failure to file a Second Amended Class Action Complaint as ordered will result in the dismissal of this action with prejudice.

**IT IS SO ORDERED.**

**DATED:   December 19, 2017**

**NANCY J. ROSENSTENGEL**
**United States District Judge**